**E.M. CHEMICALS, Plaintiff–Appellee,**

v.

**The UNITED STATES,
Defendant–Appellant.**

No. 90–1141.

United States Court of Appeals,
Federal Circuit.

Nov. 28, 1990.

Jerry P. Wiskin, Freeman, Wasserman & Schneider, New York City, argued, for plaintiff-appellee. With him on the brief were Louis Schneider and Philip Yale Simons, New York City.

Joseph I. Liebman, Attorney in Charge, International Trade Field Office, Dept. of Justice, New York City, argued, for defendant-appellant. With him on the brief were Stuart M. Gerson, Asst. Atty. Gen. and David M. Cohen, Director, Washington, D.C. Also on the brief was Karen P. Binder, Attorney, U.S. Customs Service, New York City, of counsel.

Before PLAGER, Circuit Judge, BENNETT, Senior Circuit Judge, and LOURIE, Circuit Judge.

LOURIE, Circuit Judge.

In this customs case, the initial classification by the United States Customs Service of certain liquid crystals as chemical mixtures was reversed on summary judgment by the United States Court of International Trade, which held that the liquid crystals should be classified as parts of indicator panels. *E.M. Chemicals v. United States,* 728 F.Supp. 723 (1989). The government appeals this judgment. We affirm.

## BACKGROUND

Liquid crystals are compounds or mixtures which combine the properties of liquids and crystals, *i.e.,* they have fluidity, but at the same time have optical properties associated with crystal structures, permitting their molecules to segregate so as to produce visual effects in response to heat or an electric field. E.M. Chemicals (E.M.) imported the liquid crystals at issue from Germany and Great Britain during the years 1982 and 1983. The imported liquid crystals all had benzenoid, quinoid, or modified benzenoid structures produced by a multistage synthetic chemical process.

During the relevant period, E.M.'s imported liquid crystals were used only in liquid crystal displays (LCDs). LCDs are devices for conveying numerical, alphanumerical, or graphical information. Widely known uses of LCDs included watches, clock radios, calculators, computers, gas pumps, meters, various medical and scientific instrumentation, toys, and automobile dashboards.

In 1982 and 1983 these imported liquid crystals were classified as "chemicals ... mixtures ... other," by Customs under Item 407.16 of the Tariff Schedules of the United States (TSUS), *repealed by* the Harmonized Tariff Schedule of 1988, Pub.L. No. 100–418 (codified at 19 U.S.C. § 1202 (1988)) *:

Schedule 4. Chemicals and Related Products.
Part 1.–Benzenoid Chemicals and Products
* * *
Subpart B.–Industrial Organic Chemicals
* * *
Mixtures in whole or in part of any of the products provided for in this subpart:
* * *

407.16      Other ..................... 1.7 cents per pound + 13.6% <u>ad valorem</u>

E.M. challenged Customs' classification, claiming that the liquid crystals are properly classified as parts of "indicator panels ... [or] other ... visual signalling apparatus" under Item 685.70 of TSUS:

Schedule 6. Metals and Metal Products
Part 5.–Electrical Machinery and Equipment
* * *

685.70      Bells, sirens, indicator panels, burglar and fire alarms, and other sound or visual signalling apparatus, all the foregoing which are electrical and parts thereof ................ 3.4% <u>ad valorem</u>

The Court of International Trade held, on summary judgment, that E.M. had overcome the presumption of correctness of the Customs Service's classification of the liq-

* Based upon additional information from E.M. that some of the crystals consisted of single compounds rather than mixtures, the government amended its answer to suggest alternative classifications under Item 405.60 or 405.62 of TSUS relating to single industrial chemicals. In view of our disposition of this case, no further comment is necessary concerning these alternative classifications.

uid crystals, and that the crystals are better classified as parts of indicator panels than as chemical mixtures.

## ISSUE

The issue before us is whether the Court of International Trade erred in rejecting Customs' classification and in holding that the liquid crystals, as imported, are classifiable under Item 685.70, TSUS, as parts of "indicator panels ... [or] other ... visual signalling apparatus," rather than under Item 407.16, TSUS, as other chemical mixtures.

## DISCUSSION

■ It is well-settled that the meaning of tariff terms is a question of law, while the determination whether a particular item fits within that meaning is a question of fact. *See Stewart–Warner Corp. v. United States*, 748 F.2d 663, 664–65 (Fed.Cir. 1984); *Daw Industries, Inc. v. United States*, 714 F.2d 1140, 1141–42 (Fed.Cir. 1983). In this case, the Court of International Trade granted summary judgment, and we review that grant for legal correctness. The government argues that Item 685.70 does not include LCDs and, alternatively, that liquid crystals are not "parts" of LCDs, but are mere materials, and thus are not classifiable under Item 685.70. Additionally, the government argues that the Court of International Trade erred in precluding classification under the chemical schedule. We consider each of these arguments in turn.

### A. *Indicator Panels or Visual Signalling Apparatus Under Item 685.70*

#### 1. Liquid Crystal Displays

■ In order to determine whether the imported liquid crystals are properly classifiable under Item 685.70, we first determine, as a matter of law, the proper scope of the classification "indicator panels ... [or] other ... visual signalling apparatus," and then determine whether the court properly granted summary judgment that LCDs come within this category. Although it is undisputed that liquid crystals are not indicator panels themselves, we need to determine if they are parts of LCDs, which may be indicator panels.

The trial court, in finding that LCDs are indicator panels or visual signalling apparatus, relied on *Texas Instruments Inc. v. United States*, 475 F.Supp. 1193 (Cust.Ct. 1979), *aff'd*, 620 F.2d 272, 67 CCPA 57 (1980). That case held that visual light-emitting diodes (LEDs) were indicator panels:

From the entire record in this proceeding, the court is satisfied that the merchandise in issue [LEDs] is properly classified ... as an indicator panel or a visual signalling apparatus provided by item 685.70, TSUS. Logical reasoning dictates that this device receive the same classification as possessed by all other light emitting diodes, similarly constructed and performing the identical function of visual display in connection with the respective requirements of the specific article in which they must have been incorporated.

*Id.* at 1197.

In relying on *Texas Instruments*, the Court of International Trade found that LCDs perform a function similar to that of LEDs, and that the main difference between them was that LEDs are self-illuminating, while LCDs are not. It concluded that LCDs should fall within the ambit of Item 685.70. We agree. It is uncontested that LCDs are devices which display information generally in alphanumeric, color, or graphic form and that LCDs function similarly to LEDs. Additionally, the trial court's conclusion is bolstered by the *Summary of Trade and Tariff Information*, Schedule 6, Control No. 6–5–23 (USITC July 1982), which describes LCDs and LEDs as "two major kinds of indicator panels." *Id.* at 2; *Cf. Hawaiian Motor Co. v. United States*, 617 F.2d 286, 289, 67 CCPA 42 (1980) (Summary of Trade and Tariff Information helpful to determine administrative practice, even though not suitable for use as evidence of Congressional intent). Clearly, LCDs should be classified under the same item as LEDs.

The government argues that LCDs are more than signalling devices or indicator

panels because they are installed in articles that do not signal abnormal or unusual circumstances and because that classification is limited to articles that function in such circumstances. First, we note that we are concerned with the function of LCDs, wherever installed, and not with the many functions of articles in which LCDs are installed. For this reason alone, the government's reliance on *NEC America, Inc. v. United States*, 8 CIT 184, 596 F.Supp. 466 (1984), *aff'd*, 760 F.2d 1295 (Fed.Cir.1985), is misplaced. The trial court correctly held that *NEC America* did not deal with LCDs themselves, but with the radio pagers at issue, which were the ultimate products into which the LCDs were incorporated.

Second, the government also relies on *NEC* to support its asserted limitation of Item 685.70 to the effect that a visual signalling device must "call attention to temporary or abnormal conditions." *See NEC*, 596 F.Supp. at 471 (citing *Oxford Int'l Corp. v. United States*, 75 Cust.Ct. 58, 68 (1978)). However, in a more thorough explanation of the "temporary or abnormal" limitation in the *Oxford* decision, the Court of International Trade later indicated that an indicator panel is properly classified under Item 685.70 if it merely conveys information. *A & A Int'l, Inc. v. United States*, 5 CIT 183, 187–89, 1983 WL 5002 (1983). We agree with this interpretation of Item 685.70. An LCD, as a signalling device or an indicator panel, may simply convey information or notify the user of a specific event. An LCD may operate in this manner in normal or abnormal circumstances. We do not think that LCDs fall outside Item 685.70 merely because they indicate or signal normal conditions.

Additionally, unlike *Carling Electric Co. v. United States*, 757 F.2d 1285, 1287 (Fed. Cir.1985), where this court held that a light is not classifiable under Item 685.70 because it does not always perform as a signalling device, LCDs normally perform as part of a signalling device or an indicating panel. We have not been referred to an example of an article containing an LCD where the LCD did not function as an indicating panel or a visual signalling de-

vice. During the relevant period of importation, LCDs incorporated into articles covering the spectrum from a child's toy to a physician's instrument have functioned as indicator panels or visual signalling devices.

■ Finally, tariff terms are to be construed in accordance with their common and popular meaning, in the absence of a contrary legislative intent. *See Nippon Kogaku (USA), Inc. v. United States*, 673 F.2d 380, 382, 69 CCPA 89 (1982); *Ozen Sound Devices v. United States*, 620 F.2d 880, 882, 67 CCPA 67 (1980). The terms "indicator panels" or "signalling devices" simply denote objects that "indicate" or "signal"; they do not denote objects which only indicate or signal in abnormal or unusual circumstances. *See Webster's Third New International Dictionary* (1986) at 2115, 1150 (defining signal as, *inter alia*, "an object used to transfer or convey information" and an indicator as, *inter alia*, "one that indicates"). Our review of the legislative history does not demonstrate that Congress intended to limit the common meaning of these terms. The only limits on these terms are in the schedule itself, *viz.*, that the indicator panel or signalling device must be electrical and visual. It is undisputed that the LCDs are both electrical and visual.

■ We therefore hold, as a matter of law, that the language "indicator panels . . . [or] other . . . visual signalling apparatus," in Item 685.70, includes devices that signal or indicate generally, not just in unusual or abnormal circumstances. We also conclude that the trial court did not err in granting summary judgment that LCDs come within the scope of Item 685.70.

2. The Imported Liquid Crystals

■ We next determine whether the imported liquid crystals are parts of LCDs. A part of an article is "something necessary to the completion of that article . . . without which the article to which it is to be joined, could not *function as such article*." *United States v. Willoughby Camera Stores, Inc.*, 21 CCPA 322, 324 (1933),

*cert. denied,* 292 U.S. 640, 54 S.Ct. 773, 78 L.Ed. 1492 (1934) (emphasis in original, citations omitted). Moreover, General Interpretative Rule 10(ij), TSUS, provided that a tariff provision for "parts" of a named class of articles applied to those products "chiefly used" as parts of such articles.

The government argues that even if the signalling apparatus provision is broad enough to encompass liquid crystals, the crystals in their imported condition are mere "materials," not "parts." Such a determination depends on whether the imported crystals were sufficiently processed to be dedicated for use in LCDs. *See The Servco Co. v. United States,* 68 Cust.Ct. 83 (1972), *aff'd,* 477 F.2d 579, 60 CCPA 137 (1973) (import classified as material, not part, because substantial additional processing was necessary before import could be used as a part of a given article).

The Court of International Trade held that the liquid crystals are "parts" of LCDs for tariff classification purposes. It based this conclusion on extensive evidence relating to the manufactured state of the liquid crystals and the manner in which they are incorporated into LCDs. It is undisputed that during the period of importation, the liquid crystals were sufficiently processed to have only one commercial application—for use in LCDs. In fact, LCDs cannot function as such without liquid crystals. Because the crystals have been processed sufficiently to dedicate them for use in LCDs, the court found that the crystals are not mere materials.

The government further argues that because complex or subsequent processing is involved, the liquid crystals cannot be parts of indicator panels. Even though, as imported, the liquid crystals could have been mixed with each other to change their properties, the trial court properly determined that their dedicated use in LCDs was fixed with sufficient certainty without further processing to qualify them as parts. Moreover, where an LCD manufacturer adds a twist agent liquid crystal to another imported liquid crystal after importation or otherwise mixes the crystals, as occurred

here, the court held that this simple mixing operation does not amount to substantial further processing of either crystal.

Accordingly, the Court of International Trade determined that this mixing was more akin to an assembly operation combining mechanical parts and that there was insufficient subsequent processing to preclude the liquid crystals from being classified as parts of indicator panels. We have reviewed the record and we agree with the trial court's conclusion that the liquid crystals are "parts" of indicator panels. We find no error in the grant of summary judgment.

**B. *Benzenoid Chemicals Under Item 407.16***

■ Having concluded that the liquid crystals are properly classified as parts of indicator panels, we next consider whether they are also properly classified in another part of the tariff schedule. More specifically, did the Court of International Trade err in determining that the liquid crystals are not classifiable under the chemical schedule, Item 407.16, because "the utilization of liquid crystals for their physical, rather than their chemical, properties demands their removal from the chemical schedule"? 728 F.Supp. at 726. We believe the court did err on this point.

First, the record shows that the liquid crystals at issue here are produced by chemical companies and are readily identifiable and understood to be chemicals. *See McGraw–Hill Encyclopedia of Science & Technology,* Vol. 10 (6th Ed., 1987), at pp. 110–11 (identifying selected liquid crystal compounds by their scientific names and formulas). The constituent compounds of the liquid crystals are identifiable by their Chemical Abstract Service Registry Numbers and are described or identified by chemical names and formulas in the technical literature describing their application. *See, e.g.,* G. Gray, *Advances In Liquid Crystal Materials For Applications* (BDH Chemicals, Ltd.1978); E.M. Chemicals, *Licristal Liquid Crystals* (company brochure on liquid crystals) (J.App. 248–56). All the imported crystals in question have the ben-

zenoid structure that is specifically provided for in Schedule 4, part 1, subpart B.

Second, there is no foundation for the trial court's determination that because liquid crystals are used for their physical properties, such use makes the crystals unclassifiable in Schedule 4, Part 1. Simply because a product's use is ultimately based on its physical properties, as opposed to having uses in which it acts by chemical reaction to create different chemical products or to alter the properties of other materials, is not a sufficient reason to preclude classification under the chemical schedule. Indeed, many of the products specifically set forth in Schedule 4, part 1, are useful based most directly upon their physical, rather than their chemical, properties. *See, e.g.,* Colors, dyes, stains, and related products, Item 406.02–80, TSUS; Ink powders, Item 405.10, TSUS; Photographic chemicals, Item 405.20, TSUS; and Aromatic or odoriferous compounds, Item 408.05–80, TSUS. Physical and chemical properties are both derived from the specific chemical identity of a material.

We note that Congress, in enacting the TSUS in 1962, provided for a comprehensive chemical schedule for existing and future products of the chemical industry in Schedule 4. *See Tariff Classification Study, Explanatory and Background Materials, Schedule 4—Chemicals and Related Products* at 2 (November 15, 1960). The Explanatory Notes state that:

> [t]he chemical industry introduces tens of thousands of new products to commerce each year and about half of the current sales of chemicals today are products unknown twenty years ago. Schedule 4 provides for these developments and anticipates, so far as practicable, such changes in the character of international trade as may occur in the near future.

*Id.* Thus, the schedule contemplates that its general categories encompass new compounds to be imported in the future. The compounds at issue here certainly fall within the general category of benzenoid, etc., compounds.

We conclude, therefore, that the imported liquid crystals are chemical products (or mixtures thereof) within the scope of the chemical schedule and that the trial court erred in finding that use for their physical rather than chemical properties requires removal from the chemical schedule. However, as shown below, this does not affect our overall assessment of the correctness of the judgment of the Court of International Trade.

## C. *The Rule of Relative Specificity*

■ Having concluded that the liquid crystals are properly described either as chemical mixtures under Item 407.16 or as parts of indicator panels under Item 685.70, we therefore next determine which of the two categories is the proper classification in this case.

Classification of an article falling within two or more tariff provisions was governed by General Interpretative Rule 10(c), TSUS:

> (c) an imported article which is described in two or more provisions of the schedules is classifiable in the provision which most specifically describes it; but ...:
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> ii) comparisons are to be made only between provisions of coordinate or equal status, i.e., between the primary or main superior headings of the schedules or between coordinate inferior headings which are subordinate to the same superior heading.

The primary headings requiring comparison in the present case are:

> Mixtures in whole or in part of any of the [industrial organic chemicals having a benzenoid, quinoid, or modified benzenoid structure, or acyclic organic chemical products which are obtained, derived, or manufactured therefrom]

> and

> Bells, sirens, indicator panels, burglar and fire alarms, and other sound or visual signalling apparatus ... and parts thereof.

The "chemical mixtures" heading is a residual classification of general description, and as such is the broadest type of tariff classification. *See* Sturm, *Customs Law and Administration,* § 53.1 (3d Ed.

**916**

1989). The provision for parts of "indicator panels ... [or] other ... visual signalling apparatus," on the other hand, is a "use" provision. General Interpretative Rule 10(ij) ("a provision for 'parts' of an article covers a product ... used as a part of such article"). The Court of International Trade determined that the liquid crystals are more specifically provided for under the tariff provision most accurately describing their use rather than under the chemical schedule, which describes their composition. We agree.

One of our predecessor courts has established the principle that, when two or more tariff categories are equally descriptive of an item, one that describes a use governs over one which describes the composition of the item. *See United States v. Siemens America, Inc.*, 653 F.2d 471, 478, 68 CCPA 62, (CCPA 1981) ("[I]n the absence of legislative intent to the contrary, a product described by both a use provision and an *eo nomine* provision is *generally* more specifically provided for under the use provision").

Since Item 685.70 is a "use" provision, it describes the imported items with relatively greater specificity than the descriptive residual chemical provisions relied upon by the government; based on the general rule of interpretation stated above, the use provision should govern.

### CONCLUSION

In summary, the imported liquid crystals are chemical mixtures or compounds within the scope of Item 407.16; they cannot be removed from the chemical schedule merely because they are used for their physical rather than chemical properties. However, the liquid crystals also fall within the scope of Item 685.70 as parts of indicator panels or other signalling apparatus; they are properly classified as such because Item 685.70 is a use provision which describes them with more relative specificity than the chemical classification.

AFFIRMED.