**MEDLINE INDUSTRIES, INC.,**
**Plaintiff–Appellee,**

v.

**The UNITED STATES, Defendant–Appellant.**

**No. 94–1455.**

United States Court of Appeals, Federal Circuit.

Aug. 16, 1995.

Lawrence R. Pilon, Hodes & Pilon, Chicago, IL, argued for plaintiff-appellee. With him on the brief was James L. Sawyer.

Mikki Graves Walser, Trial Atty., Commercial Litigation Branch, Dept. of Justice, New York City, argued for defendant-appellant. With her on the brief were Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director and Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office. Also on the brief was Chi S. Choy, Office of Asst. Chief Counsel, Intern. Trade Litigation, U.S. Customs Service, of counsel.

Before MAYER, Circuit Judge, SMITH, Senior Circuit Judge and SCHALL, Circuit Judge.

SMITH, Senior Circuit Judge.

The United States appeals the decision of the Court of International Trade classifying Medline Industries Inc.'s (Medline's) drawsheets under subheading 6307.90.95 of the Harmonized Tariff Schedule of the United States (HTSUS). We reverse the Trade Court's classification of Medline's drawsheets under HTSUS 6307.90.95 and hold that the drawsheets are properly classifiable under HTSUS 6302.31.20 as "bed linens."

### Background

Medline imports "drawsheets," rectangular pieces of fabric ranging from 45″ × 72″ to 54″ × 90″ which are hemmed on two or four sides and have no handles or attachments. Drawsheets are used primarily by hospitals and other health care providers to lift, roll, or slide incapacitated patients and to protect undersheets and mattresses from soiling.

The U.S. Customs Service (Customs) classified Medline's drawsheets under HTSUS 6304.92.00 as "other furnishing articles," dutiable at a rate of 7.2% *ad valorem* and subject to textile quota restraints under textile quota category 369. Medline appealed this classification to the Court of International Trade, alleging that the proper classification of the drawsheets was under HTSUS 6307.90.95 as "other made up articles," dutiable at the rate of 7.0% *ad valorem* and not subject to any textile quota restraints. The United States contended that the drawsheets were most properly classified under subheading 6302.31.20 of HTSUS as "bed linens," dutiable at the rate of 7.6% *ad valorem* and subject to textile quota restraints under textile quota category 362. The Trade Court held that, although a drawsheet is literally a sheet used on a bed, it is a special type of sheet such that it is outside the scope of what is commonly understood to be bed linen, and thus is not properly classified under HTSUS 6302.31.20. The Court further held that Customs had erred in classifying the drawsheets under HTSUS 6304.92.00, and that the drawsheets were properly classified under

HTSUS 6307.90.95, the so-called basket provision, for "other made up articles." The United States now appeals from the judgment of the Court of International Trade. We have jurisdiction under 28 U.S.C. § 1295(a)(5) (1988).

### Standard of Review

■ The Federal Circuit reviews questions of fact under a clearly erroneous standard; questions of law are subject to full and independent review (sometimes referred to as "*de novo*" or "plenary" review). *Newell Cos. v. Kenney Mfg. Co.*, 864 F.2d 757, 762–64, 9 U.S.P.Q.2d 1417, 1421–23 (Fed.Cir. 1988), *cert. denied*, 493 U.S. 814, 110 S.Ct. 62, 107 L.Ed.2d 30 (1989) (Findings of fact of a judge are subject to the "clearly erroneous rule"; any "issue of law is subject to independent plenary review and determination."). The issue of the scope of various Headings of the HTSUS is a question of law subject to full and independent review by this court. *Simod Am. Corp. v. United States*, 872 F.2d 1572, 1576, 7 Fed.Cir. (T) 82, 86 (1989) ("[T]he definition of a classification term is a question of law which [the court is] free to determine."). The factual question of whether imported items are within the scope of various Headings of HTSUS is subject to the clearly erroneous standard of review. *Id.*

### Classification under HTSUS 6302

The Court of International Trade concluded that "drawsheets are outside of the defined scope of the term 'bed linen' " because "the term 'bed linen' is broadly defined to include those items found on *all* beds; but it is undisputed that drawsheets are utilized only by the health care industry, and even then, only for certain patients whose condition directs their use." The Trade Court's conclusion on this point—that Medline's drawsheets are not bed linen—was based on its conclusion that the term "bed linen" is limited to those items found on *all* beds. That "determination of the breadth of mean-

ing [of a tariff term] is a conclusion of law and thus is not entitled to the deference" given to a question of fact. *Daw Indus., Inc. v. United States*, 714 F.2d 1140, 1142, 1 Fed.Cir. (T) 146, 148 (1983). The Trade Court erred in limiting the scope of HTSUS 6302 to include only those items found on *all* beds, and thus excluding specialized items such as drawsheets which are only found on "some" beds.

The Court of International Trade inserted limitations into HTSUS 6302 which are not supported by the language of that classification. HTSUS 6302 covers "[b]ed linen, table linen, toilet linen and kitchen linen." The Trade Court limited the "bed linen" term of HTSUS 6302 to the court's narrowly defined "items found on *all* beds." No such limitation exists in HTSUS 6302, which covers all types of "bed linen," not merely those linens ·"found on *all* beds."

■ Tariff terms are construed in accordance with their common and popular meaning, and in construing such terms the court may rely upon its own understanding, dictionaries and other reliable sources. *Marubeni Am. Corp. v. United States*, 35 F.3d 530 (Fed.Cir.1994). The tariff term "bed linen" is defined in *Webster's Third New International Dictionary* 196 (1981) as "linen or cotton articles for a bed; *esp.*: sheets and pillow cases." The *Explanatory Notes* to Heading 6302 of HTSUS provide in relevant part that "[t]hese articles are usually made of cotton or flax, but sometimes also of hemp, ramie or man-made fibres, etc.," and list as examples of bed linen "sheets, pillow cases, bolster cases, eiderdown cases and mattress covers."

■ Neither the statute nor the sources cited above limit the definition of "bed linens" to only "those items found on *all* beds." The definition of bed linens includes at least linen, cotton or other fabric articles for a bed. This definition is broad enough to encompass Medline's drawsheets.[1] The Court of Inter-

---

1. Because Heading 6302 of HTSUS provides the most specific provision for the imported drawsheets and therefore prevails over Heading 6304 and Heading 6307 of HTSUS, we do not address whether the drawsheets could be properly classified under either of these provisions. In addi-

tion, the *Explanatory Notes* to Heading 6304 provide that Heading 6304 covers furnishing articles "other than those of the preceding headings." Because we find that the imported drawsheets are properly classifiable under Heading 6302, they are excluded from classification under 6304.

national Trade erred as a matter of law in limiting the scope of the tariff term "bed linens" to include only those items found on all beds.

*Conclusion*

The Court of International Trade erred in limiting the scope of the term "bed linen" in Heading 6302 of HTSUS to include only those items found on all beds. The correct definition of bed linens includes linen, cotton or other fabric articles for a bed. Because this definition is broad enough to encompass Medline's drawsheets, the drawsheets qualify for classification under subheading 6302.31.20. The decision of the Court of International Trade is thus

**REVERSED.**