AMERICAN IMPORT CO. *v.* UNITED STATES (No. 4121)[1]

United States Court of Customs and Patent Appeals, May 2, 1938

*Lawrence & Tuttle* (*George R. Tuttle* of counsel) for appellant.
*Charles D. Lawrence*, Acting Assistant Attorney General (*William J. Vitale* and *Joseph F. Donohue*, special attorneys, of counsel), for the United States.

[Oral argument April 14, 1938, by Mr. Tuttle and Mr. Donohue]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:[2]

This appeal involves a determination of the dutiable classification of merchandise imported from Japan at the port of Los Angeles, Calif., invoiced as "silk fishing-leader gut." Exhibit 1, introduced at the trial before the lower court, represents the merchandise imported ex-

---

[1] T. D. 49612.
[2] JACKSON, Judge, took no part in the consideration or decision of this case.

cept as to length and manner of packing and consists of a number of small coils of so-called artificial gut in different sizes, ranging from No. 00 to No. 20, and in strength test from one to one hundred pounds. The exhibit shows that the silk gut material is made in different colors. The merchandise is imported in 60-foot lengths.

The collector classified and assessed the imported goods with duty at 65 per centum ad valorem under paragraph 1211 of the Tariff Act of 1930 as manufactures of silk. The appellant protested the said classification and assessment with duty, claiming the goods to be properly dutiable under paragraph 1535 of the same act at either 55 per centum ad valorem as *leaders or casts, finished or unfinished,* or 45 per centum ad valorem as *fishing tackle and parts thereof, finished or unfinished.* Other claims were made but are not relied upon here.

The lower court overruled the protest and from its judgment appellant has here appealed.

Paragraphs 1211 and 1535 read as follows:

PAR. 1211. All manufactures, wholly or in chief value of silk, not specially provided for, 65 per centum ad valorem.

PAR. 1535. Artificial flies, snelled hooks, *leaders or casts, finished or unfinished,* 55 per centum ad valorem; fishing rods and reels, and parts thereof, finished or unfinished, not specially provided for, 55 per centum ad valorem; fish hooks, artificial baits, and *all other fishing tackle and parts thereof, fly hooks, fly boxes, fishing baskets or creels, finished or unfinished,* not specially provided for, except finishing lines, fishing nets, and seines, 45 per centum ad valorem: * * * [Italics ours.]

The collector in his report refers to the merchandise as "Silk fishing lines," and the appraiser called them "Silk lines."

At the trial of this case counsel for both sides agreed that the testimony and samples submitted in protest 480468–G, arising under the Tariff Act of 1922, and involving the same parties, should apply to the merchandise covered in the instant protest. The record in the former case consists of the testimony of eight witnesses for the importer and five witnesses for the United States. The provisions of law applicable to both cases are identical except for a change in the rate of duty under the Tariff Act of 1930.

Some of the importer's witnesses were or had been in the sporting goods business and some of them had used similar material in fishing. All the witnesses agreed that the merchandise is used, after being cut into suitable lengths and after the loops had been tied at the ends, as fishing leaders, casts, or snells.

The lower court held that if it considered the evidence in the case involving protest 480468–G:

to be properly before us in this case by reason of the fact that counsel have agreed that the evidence therein might apply to the merchandise in this case, we would be compelled to overrule all of the claims in this suit. On the other hand, should

we not consider the evidence in that case to be properly before us in this case by reason of said agreement of counsel, then we would have no evidence in this case to overcome the presumption of correctness in favor of the collector's classification, or to establish any of the claims made by the plaintiff.

and accordingly overruled all the claims of importer in the instant case. In the former case, *American Import Co.* v. *United States*, T. D. 48802, 71 Treas. Dec. 202, it was stated:

We think the evidence in this case fairly establishes that the chief use of the imported merchandise is in making fishing leaders. This being true, it is, nevertheless, nothing more than a mere material for such use, just as silk cloth in the piece, designed to be used as linings for clothing, is a mere material out of which such linings are to be cut. *United States* v. *The Harding Co., supra.* [21 C. C. P. A. (Customs) 307, T. D. 46830.]

Certain witnesses gave it as their opinion that the common meaning of the term "fishing tackle * * * unfinished" includes the merchandise at bar. There was other testimony to the effect that in the opinion of the witnesses, the merchandise represented by Exhibit 1 came within the description of "leaders, unfinished." There was some testimony to the effect that if the imported coils of silk gut were not unfinished leaders, there was no such thing as an unfinished leader known to the commerce of the country.

The trial court held, as is above indicated, that the decision in this case was controlled by the decision of this court in *United States* v. *The Harding Co.*, 21 C. C. P. A. (Customs) 307, T. D. 46830, which involved brake linings in bales in running lengths and which held the same not to be parts of automobiles, finished or unfinished.

Appellant in this court has attempted to differentiate the instant issue from that involved in the *Harding Co.* case, and calls attention to the fact that there was a difference in language in the statute involved in that case and the one at bar; that the record in the *Harding Co.* case showed that the brake linings were sold in large quantities to manufacturers of brake linings; that the merchandise at bar is in small, compact coils in a size and condition desired by the individual angler; and that the record in the *Harding Co.* case also showed that the brake lining material there involved was capable of various other uses such as in "hoists and winches," clutches, as packing between steel flanges, and as a "dampener or sound deadener under heavy machinery."

It has long been the generally accepted rule that a thing may be classified for tariff duty purposes under the *eo nomine* provision for the article unfinished if that thing has been so far processed towards its ultimate completed form as to be dedicated to the making of that article or that class of articles alone. *Konishi Kotakudo Co. (Inc.)* v. *United States*, 17 C. C. P. A. (Customs) 355, T. D. 43798; *A. H. Ringk & Co. et al.* v. *United States*, 16 Ct. Cust. Appls. 132, T. D.

42769; *United States* v. *Cartier (Inc.)*, 15 Ct. Cust. Appls. 334, T. D. 42493; *United States* v. *Schenkers, Inc.*, 17 C. C. P. A. (Customs) 231, T. D. 43669; *Hecht Pearl Co. (Inc.)* v. *United States,* 18 C. C. P. A. (Customs) 171, T. D. 44375; and *United States* v. *Cohn & Rosenberg, Inc.*, 19 C. C. P. A. (Customs) 137, T. D. 45259.

It is the position of the appellant that from the raw material silk, these coils of so-called silk gut have been so far processed toward the ultimate article, leaders, as to be chiefly, if not exclusively, used as such and that since everything has been done except to finish the leaders, they must be regarded for tariff purposes as unfinished leaders.

The question presented is a perplexing one, the solution of which necessarily results in a somewhat anomalous situation. It cannot logically be denied that the imported article in 60-foot lengths is material for making leaders. All the witnesses agree that the only thing to be done to make the finished leader is to cut the material to length and, after soaking to soften the same, tie the loops. From the foregoing statement, it is obvious that if the imported coils were cut to length suitable for making different lengths of leaders, they would be more nearly finished than as imported, and if in addition to cutting the same to lengths, one of the loops was tied, they would be nearer finished than as imported.

We cannot agree with appellant that it has sufficiently distinguished the *Harding Co.* case to avoid its controlling influence in the decision of the issue at bar. While it is true that to some extent the brake lining material there involved had been used for other purposes than for brake linings for automobiles, we were of the opinion that this fact was immaterial and said:

In our opinion, the imported merchandise is not parts, finished or unfinished, of automobiles, but a mere material, "commercially capable" of various uses. But even if it could be said to be dedicated to the exclusive use of making brake linings for automobiles, it would be, nevertheless, a mere material for such use, just as silk cloth in the piece, designed to be used as linings for clothing, is a mere material out of which such linings are cut.

We think the last sentence in the foregoing quotation, which may be regarded as *obiter dictum,* is nevertheless very much in point here. The mere fact that brake lining was used exclusively in the manufacture of brakes would not make it any less a brake lining material. The same is true here. The mere fact that the instant merchandise is chiefly used, or for that matter exclusively used for leaders (and if it has any other use it is a fugitive one), does not take it out of the "material" class. Hundreds of articles might be suggested which are in the nature of material and which have found but one use. The mere fact that a thing has but one use does not require that it be considered as an article unfinished. If the material has been so far processed from the "material" stage to a partly-completed article,

then it loses its character as material and takes on the characteristics of the article for which the material was intended. Material may be a manufacture and at the same time be a material for another manufacture. In *Tidewater Oil Co.* v. *United States,* 171 U. S. 210, 216, where the relation between box shooks and finished boxes was under consideration, it was said:

The material of which each manufacture is formed, and to which reference is made in section 3019, is not necessarily the original raw material—in this case the tree or log—but the product of a prior manufacture; the finished product of one manufacture thus becoming the material of the next in rank. * * *

It is true, as is pointed out by appellant, that a holding here that the involved merchandise is dutiable as a manufacture of silk requires, notwithstanding the fact that it is a material, that it be assessed at a higher rate of duty than the finished article, which is contrary to the general policy of Congress in preparing tariff acts. Regardless of this fact, it frequently happens that Congress has so worded competing tariff paragraphs that this policy cannot be furthered by the courts in passing upon classification. Many examples in the decisions of this and other courts, illustrating this situation, might be cited. In *United States* v. *Smith & Co.,* 12 Ct. Cust. Appls. 384, T. D. 40544, this court was required to hold, by virtue of the language used in the so-called "trimming" paragraph, that an embroidered flouncing took a lower rate of duty than a plain one, which was stated to be contrary to the usual policy of Congress. On this subject we there said:

That Congress has authority to make exceptions to such policy is evident, and where language is used which will not warrant an interpretation in accord with the usual policy governing tariff legislation, obviously it should not receive such an interpretation. We may assume that Congress, acting upon information considered by it sufficient, which may not be available to this court, intended to make an exception to such general policy.

Frankly, it may be conceded that there is no apparent reason why Congress would see fit in the instant case to put a lower duty on the finished article rather than on the material, but we may not assume that it had no sufficient reason for so doing.

Referring to the duty of the court to construe language, if possible, in accordance with the general policy of tariff legislation, the Supreme Court of the United States in an opinion by Chief Justice Taft in *United States* v. *Stone & Downer Co.,* 274 U. S. 225, 244, said:

If the language of the statute is such that such results can not be avoided, of course it must be enforced accordingly. If Congress by its language has made a mistake, and so has failed in its purpose, this Court can not supply by its decision the omission of a necessary legislative provision to effect its purpose. * * *

If Congress intended that a rate of duty lower than paragraph 1211 calls for be put on a manufacure of silk on account of the fact that it is a material to be used in fishing, either chiefly or exclusively, it

could have used language concerning which there would have been no question.

It is our opinion that to reverse the decision of the trial court and hold that the material at bar in the condition imported is either unfinished leaders or unfinished fishing tackle would in other similar cases lead us far afield. If the material at bar were held to be unfinished leaders or fishing tackle unfinished, it would be difficult to determine in future cases just where to draw the line between many kinds of material exclusively used in making fishing tackle and the unfinished article.

It is very earnestly argued that even if it be held that the importation is not unfinished leaders, it may logically be held that it is unfinished fishing tackle under said paragraph 1535. The context of the provision, we think, permits of no such interpretation since it would seem to follow that if the importation is not unfinished leaders, it, for the same reason, is not unfinished fishing tackle. Appellant seeks to broaden the meaning of the term "fishing tackle" by quoting the dictionary definition of "tackle" which uses as a synonym the word "equipment," and argues that since the fisherman's tackle box is equipped with this material in long lengths to be cut as needed it is, therefore, fishing tackle. We have found no definition of the term "fishing tackle" sufficiently broad to warrant a holding that the merchandise at bar responds to the term. It is true that some of the evidence goes this far, but no authority is needed to support the well-known rule that opinions of witnesses on the common meaning of a term, though ofttimes helpful, are in no sense controlling. As we understand it, there is no contention here that the term "fishing tackle" has a commercial meaning differing from its common meaning.

Several cases have been cited by the appellant relating to the general rule heretofore referred to, as to when a thing has been so far advanced as to cause it to be regarded as an unfinished article. Most of these decisions are in no sense in point on the main question involved in the decision of the instant case and they need not be commented upon here.

The Government cites the case of *Fenton v. United States*, 1 Ct. Cust. Appls. 529, T. D. 31546, where the provision "fishing tackle or parts thereof" appearing in paragraph 165 of the tariff act of 1909 was under consideration, as holding that there the fishing tackle or the part had to be completed. The merchandise involved was small oval pieces of cork, tapered at one or both ends, with holes lengthwise through them, which to be completed fishing corks were subsequently kiln-dried, and sticks or quills inserted or cemented into the holes, then put on a lathe and turned to the proper shape, sandpapered and finished and further treated for waterproofing. They were then

dried, painted and varnished. It is obvious that the question involved there is not the one involved here.

*Rogers* v. *United States*, 14 Ct. Cust. Appls. 51, T. D. 41552, relates to a woven fabric claimed to be chair backs or seats. Since the "identity of the individual article" was not "fixed with certainty" and since the woven fabric had commercial uses for more than one purpose, it was held that it was not a manufacture in chief value of wool, not specially provided for. That case, we think, is not in point.

The Government also relies upon *United States* v. *American Hecolite Denture Corp.*, 21 C. C. P. A. (Customs) 131, T. D. 46465, where U-shaped "hecolith base plates" in form and shape suitable for finishing into parts of a set of false teeth, were held to be partly finished articles. It is not seen how that case is very helpful in answering the questions at bar. There the articles had been processed from "blocks, sheets, rods, tubes, or other forms" into a partly-finished article and had ceased to be mere material. The importer does not rely upon this case and it is not seen how it supports the contention of the Government.

There also were cited as having a bearing on the effect of the article at bar not being cut to length the following decisions, among others, of this court: *Cone et al.* v. *United States*, 5 Ct. Cust. Appls. 491, T. D. 35149; and *Cone* v. *United States*, 6 Ct. Cust Appls. 263, T. D. 35477. We have examined these cases and find that there is nothing therein contained to make them pertinent in the decision of the issue at bar.

The above brief discussion of the cases cited by the parties discloses that outside of the *Harding Co.* case, *supra*, relied upon by the Government and apparently by the trial court, there is no authority cited where the facts and the statutes under consideration were similar to those in the case at bar.

We think that the collector properly classified the merchandise as a manufacture of silk under paragraph 1211 of the Tariff Act of 1930, and the judgment of the United States Customs Court, sustaining that classification, is *affirmed*.

GARRETT, Presiding Judge, dissents.

