58 CCPA

**IDEAL TOY CORPORATION, Appellant,**

v.

**The UNITED STATES, Appellee.**

**Custom Appeal No. 5391.**

United States Court of Customs
and Patent Appeals.

Oct. 29, 1970.

Sharretts, Paley, Carter & Blauvelt, New York City, attorneys of record, for appellant; Eugene F. Blauvelt, New York City, of counsel.

William D. Ruckelshaus, Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Joseph I. Liebman for the United States.

Before RICH, ALMOND, BALDWIN and LANE, Judges, and McMANUS, Judge, Northern District of Iowa, sitting by designation.

ALMOND, Judge.

Ideal Toy Corporation, importer, appeals from the decision and judgment of the First Division, United States Customs Court,[1] which held that the imported merchandise was properly classified and overruled appellant's three consolidated protests. The merchandise, consisting of miniature automobile chassis and bodies, was classified under item 737.90 of the Tariff Schedules of the United States (TSUS), which covers toys and parts of toys not specially provided for, and was assessed with duty at 35 per centum ad valorem.

Appellant claims that the chassis is properly classifiable as an electrical article not specially provided for, under item 688.40 TSUS, dutiable at 11.5 per centum ad valorem, or, in the alternative, as a machine not specially provided for, under item 678.50 TSUS, dutiable at 10 per centum ad valorem. Additionally, appellant claims that car bodies are properly classifiable as articles not specially provided for, of plastics, under item 774.60 TSUS, dutiable at 17 per centum ad valorem.

---

1. 63 Cust.Ct. 406, C.D. 3926 (1969).

The pertinent provisions of the tariff schedules are as follows:

Classified under:

Schedule 7, Part 5, Subpart E, TSUS:

Subpart E. headnotes:

1. The articles described in the provisions of this subpart (except parts) shall be classified in such provisions, whether or not such articles are more specially provided for elsewhere in the tariff schedules * * *.

\* \* \* \* \*

2. For the purposes of the tariff schedules, a "toy" is any article chiefly used for the amusement of children or adults.

Toys, and parts of toys, not specially provided for:

\* \* \* \* \*

737.90 Other ................ 35% ad val.

Claimed under:

The car chassis

Item 678.50 Machines not specially provided for, and parts thereof 10% ad val. [or alternatively]

Item 688.40 Electrical articles, and electrical parts of articles, not specially provided for ............11.5% ad val.

The car bodies

Articles not specially provided for, of rubber or plastics:

\* \* \* \* \*

Item 774.60 Other ........... 17% ad val.

The Customs Court, in our view of the matter, made a fair and comprehensive statement of the relevant facts adduced of record. We adopt that statement in its essence. The court found:

The chassis and car bodies * * * were imported in separate cartons packed two gross to a carton. Eighteen different makes or styles of car bodies (e. g., Corvette, Impala, etc.) were imported during the 1964–65 period, and all car bodies, no matter what make, were imported in similar packing cartons.

The basic concept in merchandising the imported articles—which were advertised by plaintiff as the Motorific line ("The New Quick-Change Motor Toy")—was to offer separate bodies, separate chassis and separate motors so that a child could make his own car and change the style * * * by changing the 18 different styles of car bodies while using the same chassis. The chief feature of the Motorific line was this interchangeability of the 18 different bodies upon the chassis so that the child was able to have available different makes of cars as might suit his momentary fancy.

The chassis and car body were packaged and sold to the ultimate consumer in individual plastic containers. Other packaging contained various combinations of motor, chassis and car bodies, but the individual articles were never combined before sale to the retail purchaser. The consumer, in turn, inserted a motor and batteries in the chassis and snapped on the car body. The car so assembled was chiefly used for the amusement of children.

The chassis was dedicated to use with the car body and could not be used for any other purpose. Similarly, the car body could not be used for any purpose other than with the chassis. Neither the chassis nor the body was a plaything by itself.

The chassis and car bodies were displayed and advertised for retail sale on stands supplied by plaintiff, utilizing the packaging developed for the Motorific line. Under all forms of packaging, plaintiff in 1964 sold 935,-928 chassis; 1,761,186 car bodies; and 695,805 electric motors. In 1965, the sales figures were 3,749,561 chassis; 4,260,793 bodies; and 3,937,201 motors.

Appellant advances the contention that the chassis and car body cannot be parts of toys because they never become a part of a commercial entity or of any permanent entity. We cannot accept this conclusion. Clearly, neither chassis nor body has an independent commercial use except as part of a toy. In fact, they are imported for no other purpose than that of being coupled together to function, after addition of batteries and motor, as a toy. The mere fact that the user can switch from one body style to another does not militate against this conclusion.

We agree with the Customs Court that "the entire concept behind the Motorific line is to provide a toy with interchangeable parts." This view finds ample support in appellant's catalogs exhibited of record. Pertinent excerpts therefrom follow:

INTERCHANGEABLE–BODY FEA–
TURE MEANS MULTIPLE SALES
FOR YOU!

Twelve favorite body styles fit chassis, offer endless combinations. Each body, a mere 4½ inches long, is accurate to the last detail, will satisfy the most discerning buyer. All bodies come in a variety of popular, lustrous color, have detailed chrome plated trim, and clear headlights and windows. Each is individually boxed in clear plastic, and is labeled by make and year. Stack them for mass display and multiple sales.

\* \* \* \* \* \*

BONUS PACK STARTS COLLECTION
\* \* \* \* \* \*

To get a boy "on the road" with MO– TORIFIC! the Bonus Pack is the ideal starter set. Package is printed in brilliant colors, describes how to play with MOTORIFIC! on the back. Package lists all body styles on both sides. \* \* \*

\* \* \* \* \* \*

IT'S TERRIFIC! IT'S FUN!
IT'S \* \* \*
MOTORIFIC!

The New Dimension in Motor Toys at Prices Kids Can Afford!

\* \* \* \* \* \*

A "quick-sell" pack for the "quick-change" motor toy!

MOTORIFIC GIFT PACK

Junior car enthusiasts will "flip" for this Motorific Gift Pack Set. Each set includes Motorific body, chassis and motor, plus a conversion pin. \* \*

We think it clearly demonstrated by the record that the essence of the "Motor-

ific Motor Toy" is the interchangeability of its three basic parts, two of which parts are the chassis and body. The completed toy, per se, exists in its composition of four parts: chassis, body, motor and batteries. Its play or amusement feature resides in its appeal and opportunity for the user—whether child or adult—to snap or put the parts together and to switch from one style body to another. While the "toy" was never sold in assembled form, it was packaged in combination sets.

▆ The nature, function and purpose of an item in relation to the article to which it is attached or designed to serve determines whether the item constitutes a part of the article. Gallagher & Ascher Co. v. United States, 52 CCPA 11, C.A.D. 849 (1964). The fact that the article operates, functions or can be used without the item is not determinative. Trans Atlantic Co. v. United States, 48 CCPA 30, C.A.D. 758 (1960).

▆ We are in agreement, therefore, with the conclusion reached by the Customs Court that:

When it is considered, in short, (i) that the chassis and bodies in issue were dedicated for use with each other in conjunction with the Motorific motor toy and could not be used for any other purpose; (ii) that they were designed to be sold and were in fact sold in conjunction with that toy; and (iii) that they were necessary for the Motorific motor toy, the conclusion is inescapable that they constitute "parts" of toys within the meaning of item 737.90.

Appellant advanced below, and pursues here, the contention that assuming that the imported articles are parts of toys, they are not dutiable under item 737.90 inasmuch as those parts are specifically provided for elsewhere. We have considered appellant's argument in the context of general headnote 10(ij) and agree with the Customs Court:

However, "as is made plain by the legislative history, the intent of general headnote 10(ij) is that a provi-

sion for 'parts' is to be deemed more specific than a provision for 'articles, not specially provided for,' and therefore prevails over such * * * 'basket' provision[s]." [Citations omitted.] Thus, the *Tariff Classification Study, Seventh Supplemental Report* (Aug. 14, 1963) states (p. 99):

> General headnote 10(ij)—*Parts.* A provision for "parts" does not prevail over a specific provision for such part. Thus, *a provision for "parts" is more specific than a provision for "articles, not specifically provided for"*, but is not more specific than provisions such as the following for: "springs" (item 652.85), "illuminating articles" item 653.30–.40), "pumps" (items 660.90–661.15), etc. [Emphasis by Customs Court.]

The court was of the view, and we think correctly so, that the provisions for articles not specially provided for of rubber or plastics (item 774.60); machines not specially provided for (item 678.50); and electrical articles not specially provided for (item 688.40) are all general descriptive provisions, i. e., basket clauses, which do not specifically describe one type of article. The court stated:

> They are scarcely the "specific provisions" which would invoke the operation of general headnote 10(ij). Indeed, were such general basket provisions deemed "specific provisions" within the meaning of general headnote 10(ij), no imported merchandise could ever be classified as a "part." For in such a circumstance, a basket provision would prevail over a "part" provision—which would mean that even though an importation is a "part," it would necessarily be classifiable under a basket provision.

We have examined and considered the authorities cited and relied on by the parties hereto. A detailed discussion of them and the contentions advanced would serve no useful purpose. Suffice it to say that we are not persuaded of error in the judgment rendered by the Customs Court; therefore, we *affirm.*

*Affirmed.*