**INTEL SINGAPORE, LTD.,**
Plaintiff–Appellant,

v.

**The UNITED STATES, Defendant–Appellee.**

No. 95–1422.

United States Court of Appeals,
Federal Circuit.

May 15, 1996.

John S. Rode, Rode & Qualey, New York City, argued (Eleanore Kelly–Kobayashi, of counsel),for plaintiff-appellant.

John J. Mahon, Commercial Litigation Branch, International Trade Field Office, Civil Division, Department of Justice, of New York City, argued, for defendant-appellee. With him on the brief were Frank W. Hunger, Assistant Attorney General, and David M. Cohen, Director, Washington, D.C. Also on the brief was Joseph I. Liebman, Attorney in Charge, International Trade Field Office, New York City.

Before LOURIE, Circuit Judge, SKELTON, Senior Circuit Judge, and BOUDIN,[1] Circuit Judge.

LOURIE, Circuit Judge.

Intel Singapore ("Intel") appeals from the decision of the United States Court of International Trade denying its challenge to the United States Customs Service's ("Customs") classification of printed circuit boards imported by Intel. *Intel Singapore, Ltd. v. United States*, 886 F.Supp. 39 (Ct. Int'l Trade 1995). Because the court did not err in rejecting Intel's claim that Customs misclassified the merchandise in question, we affirm.

BACKGROUND

Intel imported eleven models of printed circuit boards from Singapore into the United States in 1988. Three types of boards are at issue here: central processing unit ("CPU") boards, local area network interface ("LAN") boards, and accelerator boards. Each board consists of a printed circuit board populated with electronic components, including a processor that executes instructions when installed in a computer device or system. The CPU boards execute commands in order to interpret, translate, and manipulate data. The LAN boards facilitate communication between two or more personal computers and allow multiple computers to share printers and storage devices. The accelerator boards supplement a computer's existing microprocessor in order to improve its memory and computational speed.

Upon entry of the boards into the United States, Customs classified the CPU boards and accelerator boards under Item 676.15, Schedule 6, Part 4, of the Tariff Schedules of the United States (1987) ("TSUS"), as "[a]ccounting, *computing*, and other data-processing machines," subject to a duty of 3.9% *ad valorem*. Intel filed an administrative pro-test asserting that the boards should have been classified under Item 676.54, TSUS, as "*[p]arts* of automatic data-processing machines and units thereof, other than parts incorporating a cathode ray tube," duty free.[2] Customs denied the administrative protest, and Intel filed a civil action in the Court of International Trade contesting that denial pursuant to 28 U.S.C. § 1581(a). At the CIT, Customs asserted for the first time that the LAN boards should also be classified under Item 676.15.

The Court of International Trade conducted a trial *de novo* during which both parties submitted expert testimony on the question whether the boards were "computing machines" within the meaning of Item 676.15. The court determined that the case was governed by our decision in *National Advanced Systems v. United States*, 26 F.3d 1107 (Fed. Cir.1994), and thus held that all the boards were properly classifiable under Item 676.15 because they were capable of computing, *i.e.*, receiving, executing, and completing instructions involving calculations, when installed in a computer device or system. The court entered a judgment affirming Customs' classification of the CPU and accelerator boards and ordering Customs to reliquidate the LAN boards under Item 676.15.

Intel timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5) (1994).

DISCUSSION

In reviewing the decision of the Court of International Trade, we apply the following general principles:

The ultimate issue as to whether particular imported merchandise has been classified under an appropriate tariff provision is a question of law subject to *de novo* review. Resolution of that issue generally entails a two-step process of (1) ascertain-

---

1. Honorable Michael Boudin, Circuit Judge, United States Court of Appeals for the First Circuit, sitting by designation.

2. The relevant tariff provisions are found in TSUS Schedule 6, Part 4, Subpart G (1987) (METALS AND METAL PRODUCTS—Machinery and Mechanical Equipment) and read as follows: Calculating machines; accounting machines, cash registers, postage-franking machines, ticket-issuing machines, and similar machines, all the foregoing incorporating a calculating mechanism:

   676.15 Accounting, computing, and other data-processing machines.

  . . . .

   676.54 Parts of automatic data-processing machines and units thereof, other than parts incorporating a cathode ray tube.

ing the proper meaning of specific terms within the tariff provision and (2) determining whether the merchandise at issue comes within the description of such terms as properly construed. The first step is a question of law which we review *de novo* and the second is a question of fact which we review for clear error. In reviewing classification determinations, Customs' classification of imported merchandise is presumed to be correct and the burden is on a party challenging the classification to overcome that presumption.

*Marcel Watch Co. v. United States,* 11 F.3d 1054, 1056 (Fed.Cir.1993) (citations omitted). In this case, determination whether the boards fall within the particular description asserted is a question of fact that we review under the clearly erroneous standard.

Intel argues that the boards [3] are not complete "computing machines" under Item 676.15, because, standing alone, they perform no computing functions. Rather, Intel suggests, the "computing machines" provision of Item 676.15 encompasses only substantially complete computer systems as sold to consumers, *viz.,* devices that contain, in addition to boards, other components such as a monitor, keyboard, hard drive, disk drive, chassis, power supply, cooling system, cables, connectors, additional memory, and software. Thus, Intel argues, because the boards had not been assembled into complete computer systems at the time of their importation, they were not substantially complete "computing machines" under Item 676.15.

■ The government responds that the Court of International Trade correctly determined that Intel's arguments were foreclosed by our decision in *National Advanced Systems.* We agree with the government's position. In *National Advanced Systems,* the merchandise in dispute was an "Additional Instruction Processor" (AIP), a component used to upgrade the Hitachi "R–9" line of mainframe computers. The AIP provided the mainframe with multi-tasking and parallel processing capability. Like the boards at

issue here, the AIP could not perform useful work until placed, after importation, within a larger computer device or system. Nonetheless, in construing Item 676.15, we stated that "the term 'computing machine,' as properly construed, encompasses devices capable of computing, *i.e.,* receiving, executing and completing instructions involving calculations, and ... it is not limited to devices equivalent to a stored-program digital computer." *National Advanced Sys.,* 26 F.3d at 1112; *see also id.* at 1110 ("The controlling question for classification purposes under Item 676.15 is whether the machine at issue 'computes,' irrespective of whether it does so by itself or in connection with another machine."). Therefore, we held that "the trial court did not err in concluding that the term 'computing machine' in Item 676.15 does not require stand-alone capability to compute. Because the AIP does compute *when installed in the R–9 computer,* it falls within the scope of that tariff provision." 26 F.3d at 1111 (emphasis added).

Thus, contrary to Intel's view, the "computing machines" provision of Item 676.15 is not limited to devices that possess the stand-alone capability to compute. It is not limited to "computers" in the layman's sense of the word, *i.e.,* systems having a disk drive, hard drive, keyboard, monitor, etc. Rather, Item 676.15 also encompasses devices that perform useful computing work when installed within a computer system. Thus, since it is not disputed that Intel's boards "compute when installed," 26 F.3d at 1111, in a finished computer device or system,[4] the Court of International Trade did not clearly err in determining that the boards were properly classifiable as "computing machines" under Item 676.15. Our decision is further supported by the fact that Intel even referred in its own Systems Handbooks to the boards as "Single Board Computers" and described them as "complete computer system[s]."

Intel urges certain technical distinctions between its boards and the AIP at issue in *National Advanced Systems.* Intel points

---

3. Since the trial court and Intel have treated the three types of boards similarly, we shall also.

4. Intel has not challenged the court's finding that each of the boards is capable of performing computing functions when installed in a complete computer system.

out, for example, that its boards lack a Read–Only Memory Basic Input/Output System (ROM BIOS). Like the Court of International Trade, however, we are unpersuaded that any of these distinctions are meaningful in view of the broad scope of Item 676.15. As we stated in *National Advanced Systems:*

> Item 676.15 "is an *eo nomine* designation which includes all forms of the article." *Hasbro Indus., Inc. v. United States,* 7 Fed. Cir. (T) 110, 112, 879 F.2d 838, 840 (1989). The express language of Item 676.15 broadly covers "computing machines" and contains no terms of limitation confining its scope to machines having a specific kind of memory or input/output capability. Moreover, the pertinent legislative history is devoid of any indication that Congress intended to limit the provision's scope to a certain kind of computer.

26 F.3d at 1111 (citation omitted). Intel has not pointed to any distinctions between the boards at issue here and the AIP in *National Advanced Systems* that are persuasive on the question of classification under Item 676.15.

We also reject Intel's contention that the so-called *Daisy–Heddon* criteria for determining whether an article is "substantially complete" for purposes of classification establish that the boards are not classifiable under Item 676.15. *See Daisy–Heddon, Div. Victor Comptometer Corp. v. United States,* 66 C.C.P.A. 97, 600 F.2d 799 (1979); *see also Simod Am. Corp. v. United States,* 872 F.2d 1572, 7 Fed. Cir. (T) 82 (1989) (applying *Daisy–Heddon* criteria to determine whether imported shoe components were substantially finished items of "footwear" so as to be classifiable as such). Intel argues that the boards are not substantially complete "computing machines" because they constitute only one element of a complete computer system having other components such as a hard drive, disk drive, monitor, keyboard, etc. Again, however, this argument incorrectly presumes that Item 676.15 is limited to computer systems that contain all these components. Because Item 676.15 is not so limited and covers the boards themselves, Intel's argument lacks merit.

█ Although the boards are classifiable under Item 676.15, "[t]hat ... does not end our inquiry here in view of the possibility that 'the importer's alternative [classification] may ... be a *better* classification than the government's.'" 26 F.3d at 1112 (quoting *Jarvis Clark Co. v. United States,* 733 F.2d 873, 878, 2 Fed. Cir. (T) 70, 75, (1984)). We must therefore consider whether, as Intel argues, the boards are more properly classifiable under Item 676.54, TSUS, as "[p]arts of automatic data-processing machines and units thereof, other than parts incorporating a cathode ray tube." This same contention, however, was rejected in *National Advanced Systems* for the following reason:

> Item 676.15 is an *eo nomine* provision that specifically describes the imported merchandise by name. Although it is unclear under General Rule 10(c) which provision, the *eo nomine* provision or the "parts" provision, *most* specifically describes the AIP, General Interpretative Rule 10(ij) provides the answer. That rule instructs that "a provision for 'parts' of an article [Item 676.54] covers a product solely or chiefly used as part of such article, *but does not prevail over a specific provision for such part* [Item 676.15]" (emphasis added). As the trial court correctly recognized, that rule precludes classification of the AIP as a "part" under Item 676.54.

26 F.3d at 1112 (emphasis in original). Thus, as we held in *National Advanced Systems,* merchandise that is properly classifiable under Item 676.15 cannot, consistent with General Interpretative Rule 10(ij), be classified as a "part" under Item 676.54. Accordingly, we reject Intel's contention that the boards should have been classified under Item 676.54.

We have considered Intel's remaining arguments but find them unpersuasive.

## CONCLUSION

The Court of International Trade correctly determined that the imported merchandise was properly classifiable under Item 676.15. We therefore affirm the court's judgment sustaining Customs' classification decision.

***AFFIRMED.***