**Slip Op. 10-67**

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| PACIFIC NORTHWEST EQUIPMENT, INC.,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | **Before: Gregory W. Carman, Judge**<br><br>Court No. 07-00184 |

[*Plaintiff's motion for summary judgment is granted, Defendant's cross-motion for summary judgment is denied.*]

Dated: June 15, 2010

Joel R. Junker & Associates (Joel R. Junker), for Plaintiff.

Tony West, Assistant Attorney General, Barbara S. Williams, Attorney-in-Charge, Commercial Litigation Branch, Civil Division, United States Department of Justice (Justin R. Miller, Edward F. Kenny, Jason M. Kenner); and Beth C. Brotman, of counsel, Office of Assistant to Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection, Department of Homeland Security, for Defendant.

<u>**OPINION**</u>

**CARMAN, JUDGE:** This case requires the Court to determine the appropriate tariff classification for what appears to be, at first glance, a contradiction in terms: "platform containers." Pacific Northwest Equipment ("Plaintiff" or "PNW Equipment") challenges the denial of six protests by Customs and Border Protection ("CBP") relating

to the classification of 98 entries of Plaintiff's imported product. For the reasons set forth below, the Court finds that Plaintiff's product is properly classifiable under heading 8609, HTSUS,[1] as "Containers (including containers for the transport of fluids) specially designed and equipped for carriage by one or more modes of transport." Summary judgment is therefore granted for Plaintiff.

## BACKGROUND

Plaintiff refers to its merchandise as "platform containers," which it defines as "special-purpose shipping container[s]" without "doors, walls, or a roof," and which are "designed for use in intermodal transportation, typically by road, rail, and ocean transport." (Mem. of P&A in Supp. of Pl.'s Mot. For Summ. J. ("Pl.'s MSJ") 1.) Defendant agrees that the subject merchandise is "used to secure cargo during transport on vessels, trucks, and railroad cars," but assiduously avoids referring to the subject merchandise as any sort of container, preferring to use the term "platform," in isolation. (Mem. In Opp'n. to Pl.'s Mot. for Summ. J. and in Supp. of Def.'s Cross-Mot. for Summ. J. ("Def.'s MSJ") 1, see also Def.'s Resp. To Pl.'s Stmt. Of Undisputed Material Facts

---

[1]Heading 8609, HTSUS (2005) reads:

8609.00.00       Containers (including containers for the transport of fluids) specially designed and equipped for carriage by one or more modes of transport

This language remained unchanged in the 2006 edition of the HTSUS.

("Def.'s Resp. Facts") ¶¶ 1, 2, 3, 4, 7.)[2] Defendant's objection to the nomenclature is a reflection of its position that the imported merchandise is not classifiable under the tariff subheading for containers, but rather as an article of iron or steel under subheading 7326.90.8587.[3] The Court's adoption of Plaintiff's terminology throughout this opinion is an effect, and not a cause, of the Court's determination that Plaintiff's product is appropriately classified under heading 8609.

PNW Equipment imported platform containers from Korea into the United States between March 2005 and February 2006. (Complaint ("Compl.") Sch. A, Def.'s MSJ 1.) Prior to importation, in January 2005, Plaintiff received a CBP Form 29 Notice of Action. The form indicated the position of CBP's National Import Specialists in New

---

[2]On June 15, 2010, the court accepted Plaintiff's amended statement of undisputed material facts and the amended counter statement of the United States on consent of the parties. The amendments are immaterial to the disposition of the case.

[3]The relevant portion of Chapter 73, HTSUS (2005) reads:

| | | |
|---|---|---|
| 7326 | Other articles of iron or steel: | |
| | . . . | |
| 7326.90 | Other | |
| | . . . | |
| | Other | |
| | . . . | |
| | Other | |
| | . . . | |
| 7326.90.85 | Other | |
| | . . . | |
| 7326.90.8587 | Other | |

This language remained unchanged in the 2006 edition of the HTSUS.

York that platform containers should be classified according to their constituent material—steel—under heading 7326, and not under heading 8609, because they "do not have a measurable internal volume, and are simply platforms." (Pl.'s MSJ 2.) In February 2005, at the behest of Plaintiff, CBP requested an internal advice memorandum from CBP Headquarters regarding the appropriate classification of Plaintiff's merchandise. (Compl. ¶ 11, Answer ("Ans.") ¶ 11; HQ 967571 (Aug. 16, 2006), Pl.'s Ex. O.) By the time the requested internal advice memorandum arrived in August 2006, CBP had already liquidated 68 of the 98 entries contested in this lawsuit under heading 7326; the remaining 30 entries were liquidated in December 2006. (Compl. ¶ 12, Sch. A, Ans. ¶ 12.) Plaintiff filed protests with CBP which were denied on December 11, 2006 and May 15, 2007. (Compl ¶ 4-5, Ans. ¶ 4-5.) After paying the duties owed pursuant to 28 U.S.C. § 2637(a), Plaintiff commenced this lawsuit with the filing of a summons on June 1, 2007. (Summons, Dkt. 1.) This Court has jurisdiction under 28 U.S.C. § 1581(a).

## STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine issue as to any material fact" and the Court determines that the movant is "entitled to judgment as a matter of law." USCIT R. 56(c). The Court of International Trade reviews CBP protest decisions "upon the basis of the record made before the court," which is to say, *de novo*.

28 U.S.C. § 2640(a)(1); See also Park B. Smith v. United States, 347 F.3d 922, 924 (Fed. Cir. 2003). Ultimately, in a tariff classification case, "the court's duty is to find the *correct* result, by whatever procedure is best suited to the case at hand." Jarvis Clark Co. v. United States, 733 F.2d 873, 878 (Fed. Cir. 1984) (emphasis in original).

When there is a dispute over classification, the court first undertakes the legal question to "construe the relevant classification headings" and then undertakes the factual question to "determine under which of the properly construed tariff terms the merchandise at issue falls." Bausch & Lomb, Inc. v. United States, 148 F.3d 1363, 1365 (Fed. Cir. 1998). When "the nature of the merchandise is undisputed, . . . the classification issue collapses entirely into a question of law." Cummins Inc. v. United States, 454 F.3d 1361, 1363 (Fed. Cir. 2006) (citations omitted).

## DISCUSSION

**A.** **According to the Ordinary Definition of "Container," Platform Containers are Appropriately Classified in Heading 8609**

Defendant argues that heading 8609 is not the appropriate tariff classification for platform containers only on the grounds that platform containers are not containers, as that term is ordinarily used. (Def.'s MSJ 7-24.) That is to say, Defendant does not offer any argument that the platform containers at issue in this case are not "specially designed and equipped for carriage by one or more modes of transport." 8609.00.00, HTSUS. Accordingly, the Court finds that this case hinges entirely on the meaning of

the term "container," and whether that term includes the platform containers imported by PNW Equipment in this case.

When a term is not defined in the HTSUS, its meaning "is presumed to be the same as its common or dictionary meaning." Brookside Veneers, Ltd. v. United States, 847 F.2d 786, 789 (Fed. Cir. 1988) (quotation and citation omitted); see also E.M. Chems. v. United States, 920 F.2d 910, 913 (Fed Cir. 1990) ("tariff terms are to be construed in accordance with their common and popular meaning, in the absence of a contrary legislative intent."). The common meaning of a term used in commerce is presumed to be the same as its commercial meaning. Simod Am. Corp. v. United States, 872 F.2d 1572, 1576 (Fed. Cir. 1989). The Court may determine the common meaning of a term by relying upon its "own understanding, dictionaries and other reliable sources." Boen Hardwood Flooring, Inc. v. United States, 357 F.3d 1262, 1264 (Fed. Cir. 2004) (quoting Medline Indus., Inc. v. United States, 62 F.3d 1407, 1409 (Fed. Cir. 1995.))

The dictionary definition of the term "container" is expansive enough to include platform containers. A container is simply "one that contains," and to contain means "to keep within limits: hold back or hold down." Webster's Third New International Dictionary 490-91 (1986). It is evident that a platform container is used to keep various objects within limits, by holding down such objects during intermodal transport. The dictionary definition of container identifies as exemplars, "a receptacle (as a box or jar)

or formed or flexible covering for the packing or shipment of articles, goods, or commodities," and "a portable usu[ally] metal compartment in which freight is placed for convenience of movement esp[ecially] on railroad container cars." Id. at 491. However, these exemplars do not require a "container" to be anything more than simply "one that contains." Cf. E.M. Chemicals, 920 F.2d at 913 (stating that "[t]he terms 'indicator panels' or 'signalling devices' simply denote objects that 'indicate' or 'signal,'" and rejecting a limitation of the broadest meaning of these terms absent a showing of Congressional intent to do so.) Accordingly, the Court holds that the appropriate tariff classification of platform containers is HTSUS subheading 8609.00.00, "Containers (including containers for the transport of fluids) specially designed and equipped for carriage by one or more modes of transport."

The Court rejects Defendant's proffered definition of the term "container," because it elevates the term's connotation over its denotation. Cobbling together various definitions and exemplars, Defendant proposes that a container is "a receptacle into which goods can be held and contained within physical limits." (Def.'s MSJ 10.) A word's connotation is "something implied or suggested by [that] word," while its denotation is its "meaning," especially the "direct specific meaning as distinct from additional suggestion." See Webster's Third New International Dictionary 481, 692. While the term "container" is frequently used to connote an enclosed compartment in

ordinary parlance, the dictionary definition of a container is not so restrictive.

Similarly, Defendant would also have the Court assign unduly restrictive meaning to prepositions such as "in" and "within." Defendant claims that platform containers "cannot hold anything <u>within</u> their limits," because they "have no walls (sides), overhead (top), or doors (ends)." (Def.'s MSJ at 10 (emphasis added).) This assertion restricts the meaning of the preposition "within," and ignores many uses it can bear; an enclosed three dimensional space is not a prerequisite for the appropriate use of the term. For example, soccer players stay "within" the boundaries of the field, and as such are "contained" by the field, no matter that the field is essentially planar. Or, more abstractly, an ideology may be said to "contain within" it a particular belief. To suggest that only enclosed compartments are capable of "containing within" is plainly inaccurate.

**B. <u>Platform Containers are Consistent With Explanatory Note 86.09</u>**

While the dictionary meaning of the term "container" makes clear that platform containers should be classified in heading 8609, the Explanatory Note ("EN") for this heading further confirms this result. "[A] court may refer to the Explanatory Notes of a tariff subheading, which do not constitute controlling legislative history but nonetheless are intended to clarify the scope of HTSUS subheadings and to offer guidance in interpreting subheadings." <u>Mita Copystar Am. v. United States</u>, 21 F.3d 1079, 1082 (Fed.

Cir. 1994). In its entirety, the Explanatory Note reads:

> **86.09 - Containers (including containers for the transport of fluids) specially designed and equipped for carriage by one or more modes of transport.**
>
> These containers (including lift vans) are packing receptacles specially designed and equipped for carriage by one or more modes of transport (e.g., road, rail, water or air). They are equipped with fittings (hooks, rings, castors, supports, etc.) to facilitate handling and securing on the transporting vehicle, aircraft or vessel. They are thus suitable for the "door-to-door" transport of goods without intermediate repacking and, being of robust construction, are intended to be used repeatedly.
>
> The more usual type, which may be of wood or metal, consists of a large box equipped with doors, or with removable sides.
>
> The principal types of container include :
>
> (1)   Furniture removal containers
> (2)   Insulated containers for perishable foods or goods
> (3)   Containers (generally cylindrical) for the transport of liquids or gases. These containers fall in this heading **only** if they incorporate a support enabling them to be fitted to any type of transporting vehicle or vessel; otherwise they are classified according to their constituent material.
> (4)   Open containers for bulk transport of coal, ores, paving blocks, bricks, tiles, etc. These often have hinged bottoms or sides to facilitate unloading.
> (5)   Special types for particular goods, especially for fragile goods such as glassware, ceramics, etc., or for live animals.
>
> Containers usually vary in size from 4 to 145m$^3$ capacity. Certain types are however smaller, but their capacity is not normally less than 1 m$^3$.
>
> The heading **excludes** :
>
> (a)   Cases, crates, etc., which though designed for the "door-to-door" transport of goods are not specially constructed as described above to be secured to the transporting

vehicle, aircraft or vessel; these are classified according to their constituent material.

(b)     Road-rail trailers (intended mainly for use as road trailers, but so designed that they may be transported on special railway wagons fitted with guide rails) (**heading 87.16**).

Explanatory Note 86.09 (4th edition 2007) (emphases in original).

Defendant's arguments that EN 86.09 is exclusive of platform containers are unpersuasive. First, Defendant claims this EN requires containers to have a "measurable . . . cubic capacity," which, according to Defendant, refers to "the amount of volume which a container encloses[, and] is determined by multiplying length times width times depth." (Def.'s MSJ at 12-13.) Relying on this definition of cubic capacity, Defendant maintains that platform containers "do not, and cannot ever, have any cubic carrying capacity," because they lack "walls (sides), overhead (top), [and] doors (ends)." (Id. at 13.) However, contrary to Defendant's assertions, EN 86.09 contains no explicit requirement that containers have a "measurable cubic capacity." See EN 86.09.

Even assuming that the description of the typical magnitude of container capacity in EN 86.09 creates an implicit requirement of measurable cubic capacity, Defendant does not make a convincing case that platform containers lack this feature. Once again, Defendant's positioned is undermined by proffering too narrow a definition of the relevant terminology. As a shipping device useful for the transportation of three-dimensional objects, platform containers necessarily have a measurable capacity, which could be stated in cubic meters, cubic inches or any other

form of cubic measurement. That is to say, even if not easily calculable through elementary arithmetic formulas (such as length times width times height), a platform container's capacity is limited, whether by safety regulation, space available on the transporting vehicle, or the laws of physics.[4] Moreover, containers in the form of a "large box" with doors or sides, which <u>do</u> lend themselves to the type of volume calculation described by Defendant, are characterized in this EN only as "the more usual type," leaving ample space within this EN for a container without sides or doors. <u>See</u> <u>id.</u>

Finally, Defendant's belief that the term "receptacle" in EN 86.09 excludes platform containers is similarly misguided. Receptacle, meaning "one that receives and contains something," is synonymous with container, and does not necessarily signify an enclosed compartment in the way Defendant advocates. <u>Compare</u> <u>Webster's Third New International Dictionary</u> 1894, <u>with</u> (Def.'s MSJ at 13) (asserting without dictionary citation that "receptacles by definition have sides, walls, or other physical features to enclose cargo.")

## C.    All of Defendant's Other Arguments are Unpersuasive

The Court finds that the internal advice memorandum issued to the area port

---

[4]This is supported by the testimony of two of Plaintiff's witnesses who stated that platform containers are considered to have a "measurable volume capacity." (Pl.'s MSJ 24.)

director at the request of PNW Equipment lacks any power to persuade, and

accordingly does not warrant deference.  A classification ruling's power to persuade

"depends on the thoroughness evident in the classification ruling, the validity of its

reasoning, its consistency with earlier and later pronouncements, the formality

attendant the particular ruling, and all those factors that give it power to persuade."

Mead Corp. v. United States, 283 F.3d 1342, 1346 (Fed. Cir. 2002) (citing United States v.

Mead Corp., 533 U.S. 218, 219-20 (2001); Skidmore v. Swift & Co., 323 U.S. 134, 140

(1944).)

HQ 967571 is facially unpersuasive because in it, CBP relies on the mistaken

notion that the essential feature of containers classifiable under heading 8609 is "some

kind of sides or door."  See HQ 967571 at 4 (asserting that "some kind of wall" is

necessary for a shipping device to be classified in heading 8609, and finding that

because platform containers have "no walls or doors," they "cannot be considered to

hold a measurable volume.").  As explained above, this is simply not true.  While it may

be easier to calculate the maximum carrying capacity of a box-like container using

simple arithmetic formulas, a platform container also necessarily has a measurable

carrying capacity.  Moreover, the dictionary definition of container does not require that

it have sides, walls, or doors, and EN 86.09 does not demand that containers be so

constituted.  To the contrary, according to heading 8609, the only essential feature of

containers classifiable thereunder is being "specially designed and equipped for carriage by one or more modes of transport," which is undisputed in this action. See 8609.00.00, HTSUS; see also EN 86.09 (specifying that whether "cases and crates" or "containers for the shipment of liquids and gasses," are here classifiable depends on whether they have been specially designed for intermodal transport).

Additionally, the Court finds that the definition of container found in the Customs Convention on Containers, Dec. 6, 1975, T.I.A.S. No. 12,085, 988 U.N.T.S. 43 ("CCC") (cited by Defendant), includes language that is absent from the HTSUS and EN 86.09, reinforcing the Court's conclusion in this case. As used in the CCC, the term "container" means "an article of transport equipment . . . (i) **fully or partially enclosed to constitute a compartment** intended for containing goods." (Def.'s MSJ 14 (quoting 1994 Edition of CCC) (emphasis added by Defendant).) While this phrase is found in other international treaties, such as the Customs Convention on the International Road Transport of Goods under Cover of TIR Carnets, Mar. 20, 1978, KAV 2251, 1079 U.N.T.S. 89, the Court finds that the absence of those eight words—"fully or partially enclosed to constitute a compartment"—in both HTSUS heading 8609 and EN 86.09 is both conspicuous and consequential. In fact, the definition of container in the Convention on Safe Containers, Sep. 6, 1977, 29 U.S.T. 3707, 1064 U.N.T.S. 3 ("CSC"), cited by Plaintiff, which does not include the requirement of an enclosed compartment,

has more in common with EN 86.09 than does the definition in the CCC.[5]

By virtue of General Rule of Interpretation ("GRI") 1 and the pertinent section notes, because platform containers are classifiable under heading 8609, they are not classifiable under heading 7326. GRI 1 of the HTSUS states that "classification shall be determined according to the terms of the headings and any relative section or chapter notes." GRI 1, HTSUS. According to HTSUS Section Note 1(g) of Section XV, that

---

[5]

| CSC, Art. II, ¶ 1 (cited by Plaintiff): | CCC, Art. 1(c) (cited by Defendant): |
|---|---|
| "Container" means an article of transport equipment: | (c) the term "container" shall mean an article of transport equipment (lift-van, movable tank or other similar structure) : |
| (a) of a permanent character and accordingly strong enough to be suitable for repeated use; | (i) fully or partially enclosed to constitute a compartment intended for containing goods; |
| (b) specially designed to facilitate the transport of goods, by one or more modes of transport, without intermediate reloading; | (ii) of a permanent character and accordingly strong enough to be suitable for repeated use; |
| (c) designed to be secured and/or readily handled, having corner fittings for these purposes; | (iii) specially designed to facilitate the carriage of goods, by one or more modes of transport, without intermediate reloading; |
| (d) of a size such that the area enclosed by the four outer bottom corners is either: | (iv) designed for ready handling, particularly when being transferred from one mode of transport to another; |
| (i) at least 14 sq. m. (150 sq. ft.) or | (v) designed to be easy to fill and to empty; and |
| (ii) at least 7 sq. m. (75 sq. ft.) if it is fitted with top corner fittings; | (vi) having an internal volume of one cubic metre or more; |
| the term "container" includes neither vehicles nor packaging; however, containers when carried on chassis are included. | the term "container" shall include the accessories and equipment of the container, appropriate for the type concerned, provided that such accessories and equipment are carried with the container. The term "container" shall not include vehicles, accessories or spare parts of vehicles, or packaging. Demountable bodies, are to be treated as containers[.] |

section "does not cover . . . articles of Section XVII." In other words, if a good is properly classifiable under Section XVII, it may not be classified in Section XV by virtue of this section note. Therefore, because heading 8609 is located within section XVII, and because heading 7326 is located within section XV, the analysis of the appropriate tariff classification for platform containers is resolved through the application of GRI 1, and does not require resorting to any subsequent GRI.

### CONCLUSION

For the foregoing reasons, the Court holds that platform containers are properly classifiable under subheading 8609.00.00, HTSUS. Plaintiff's motion for summary judgment is therefore granted and Defendant's cross-motion for summary judgment is denied. Judgment will enter accordingly.

_/s/ Gregory W. Carman_
Gregory W. Carman

Dated: June 15, 2010
     New York, NY